IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| WILLIE DANFORD, | |
|---|---|
| Petitioner, | No. 9:12-cv-0201-JKS |
| vs. | MEMORANDUM DECISION |
| HAROLD GRAHAM, Superintendent, Auburn Correctional Facility,[1] | |
| Respondent. | |

Willie Danford, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Danford is in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Auburn Correctional Facility. Respondent has answered, and Danford has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

Danford was arrested after selling approximately two ounces of cocaine to a confidential police informant ("CI"). He was indicted and found guilty after a jury trial of one count of criminal sale of a controlled substance in the second degree. The trial court sentenced him, as a second felony offender, to 14 years' imprisonment followed by 5 years of post-release supervision and directed him to pay restitution in the amount of $2,400 to the county drug task force for the buy money used in the undercover operation.

---

[1] Harold Graham, Superintendent, Auburn Correctional Facility, is substituted for Thomas LaValley, Superintendent, Clinton Correctional Facility. FED. R. CIV. P. 25(c).

-1-

Through counsel, Danford directly appealed, arguing that: 1) the verdict was not supported by legally sufficient evidence and/or was against the weight of the evidence; 2) admission of the cocaine evidence was in error because chain of custody had not been established; 3) the People violated their discovery obligations under *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1991), by failing to disclose prior to jury selection a document relevant to the chain of custody of the cocaine; 4) the trial court improperly admitted into evidence a document prepared by Sergeant Caufield memorializing oral admissions that Danford allegedly made to him; 5) the trial court committed reversible error in sustaining the prosecution's hearsay objections to Danford's testimony as to what the police told him during interrogation; 6) the order of restitution was not authorized by law; and 7) the sentence was excessive and should be reduced in the interests of justice.

The Appellate Division vacated the restitution order and otherwise affirmed the conviction in a reasoned opinion. Danford filed a counseled application for leave to appeal, which the Court of Appeals summarily denied. Danford timely filed his *pro se* Petition to this Court on January 17, 2012.

## II. GROUNDS RAISED

Danford raises the following claims: 1) the trial court improperly admitted into evidence a document prepared by Sergeant Caufield purporting to memorialize oral admissions that Danford made to him; 2) admission of the cocaine evidence was in error because no complete chain of custody had been established; 3) the People violated their *Rosario* obligations by failing to disclose prior to jury selection a document relevant to the chain of custody of the cocaine; and

4) the trial court committed reversible error in sustaining the prosecution's hearsay objections to Danford's testimony as to what the police told him during interrogation.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim One: Improper Admission of Confession

At trial, the prosecution offered into evidence a Cortland County Sheriff's Department "oral admissions form." The form purported to relate Danford's oral admission to both Sergeant Caufield and Sergeant Boice. The form was signed by Sergeant Caufield but was not signed or otherwise acknowledged by Danford. It is not clear if the form went to the jury and was available during deliberations.

Sergeant Boice testified that he informed Danford of his *Miranda* rights prior to police questioning, and that Danford waived his rights as indicated on a waiver of rights form prepared by Boice. The prosecution did not ask Sergeant Boice any questions about the oral admissions form, and defense counsel did not reference the form on cross-examination. On cross-examination, Sergeant Boice testified that he and Sergeant Caufield questioned Danford, that he could not recall if other officers were present, and that Danford "wanted to talk." Defense counsel did not question Sergeant Boice about the oral admissions form or otherwise inquire as to the substance of the police questioning.

Sergeant Caufield also testified. The prosecution did not elicit any substantive testimony from Sergeant Caufield about Danford's supposed admission. The prosecution only asked if

Sergeant Caufield was aware if Danford made any statements. Caufield testified that he knew Danford made a statement because Caufield, along with Sergeant Boise, asked Danford questions leading to his statement, and Caufield was present for Danford's statement. He further testified that he memorialized Danford's statements on the oral admissions form.

Defense counsel cross-examined Sergeant Caufield about the circumstances in which he obtained the verbal admission and prepared the form, asking if he used a pre-printed form or drafted the form himself, who questioned Danford, and whether Caufield memorialized the questions and answers verbatim. Defense could did not question Sergeant Caufield about the substance of the form.

Danford then testified, swearing "on his father's grave" that he did not sell the CI cocaine or confess to police. On cross-examination, the prosecution impeached Danford about his statement that he did not make any admissions to police by asking him to read the oral admissions form out loud. Danford additionally responded that Sergeant Boice had asked the questions rather than Sergeant Caufield. On redirect, Danford clarified that although he was asked the questions by police as set forth on the form, he did not make the incriminating responses indicated by Sergeant Caufield.

During summation, defense counsel addressed the oral admissions form, arguing that Danford was "in an interrogation room for an extended period of time, surrounded by police officers," and that the statement "wasn't Mr. Danford telling you his words, it was their words." Defense counsel further argued that Danford denied making the admissions in a prior hearing, that it was "not clear" whether he had effectively waived his *Miranda* rights, and that there was no written confession. In rebuttal, the prosecution noted that the jury had heard conflicting

evidence about Danford's police interview, and that it was up to them to determine the credibility of the witnesses and what the evidence demonstrated.

Danford argued on direct appeal that it was reversible error under state law to admit the oral admissions form because he did not sign or otherwise acknowledge the document. Danford conceded, however, that receipt of such a statement may be harmless error under state law when "properly analyzed as a non-constitutional error" where other evidence of a defendant's guilt is "overwhelming." The Appellate Division agreed that the trial court erred under state law, but nevertheless concluded that the error was harmless in light of the other evidence of Danford's guilt. In his Petition before this Court, Danford again argues the trial court improperly admitted the oral admissions form because he did not sign or otherwise acknowledge it.

As an initial matter, the Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986). The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). On direct appeal, the appellate court determined that, in line with New York state case law, admission of the unacknowledged memorialization of Danford's oral confession was harmless. This Court is bound by the state court's interpretation of New York state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Even assuming the error was one of constitutional dimension, this Court may only reverse the state court's harmless error determination on the ground that it was objectively unreasonable. *Zappulla v. New York*, 391 F.3d 462, 467 (2d Cir. 2004). By "distilling . . . Supreme Court precedents," the Second Circuit has found the following factors to be relevant in determining whether the erroneous admission of a confession was harmless error: 1) the overall strength of the prosecution's case; 2) the prosecution's conduct with respect to the improperly admitted evidence; 3) the importance of the wrongly admitted testimony; and 4) whether such evidence was cumulative of other properly admitted evidence. *Id.* at 468. The strength of the prosecution's case is "the most important factor in our inquiry." *Perkins v. Herbert*, 596 F.3d 161, 179 (2d Cir. 2010).

Here, the prosecution's case against Danford was indeed strong, and the oral admissions form was cumulative of other testimony presented at trial. Among other evidence introduced at trial, the police gave the CI $2,400 in pre-recorded buy money to use in the transaction, the police monitored the CI before, during, and after the transaction, the transaction was audio-recorded and the recording was played for the jury, the police thoroughly searched the CI and his vehicle for money and contraband prior to the transaction, the police apprehended Danford and the CI immediately after the transaction, and, upon their apprehension, the police found 2 ounces of cocaine on the front seat of the CI's vehicle and the entire $2,400 of pre-recorded buy money in Danford's pocket. The CI testified that after being caught possessing cocaine, he facilitated a buy at the behest of police in which he purchased 2 ounces of cocaine from Danford for $2,400.

In addition, the memorialized admission was not emphasized by the prosecution, but was used to impeach Danford's claim that he did not make any admissions to the police. Danford therefore cannot prevail on this claim. *See Perkins*, 596 F.3d at 177-78 (state's determination

that admission of petitioner's un-*Mirandized* written confession was harmless error was not unreasonable where the confession was cumulative of properly admitted evidence and the remaining evidence of guilt was strong); *cf. Zappulla*, 391 F.3d at 474 (state court's determination that admission of un-*Mirandized* confession was harmless error was unreasonable where the prosecution's case was weak, the prosecution emphasized the confession, the confession went to an issue central to the case, and the fact that "a written confession can never truly be said to be merely cumulative").

Claim Two: Chain of Custody

Danford next argues that "because no complete chain of custody of the alleged cocaine was established, receipt of the alleged cocaine and of the evidence of it's [sic] analysis was error, which requires reversal."

The Appellate Division rejected this claim on direct appeal, concluding as follows:

> Here, [Sergeant] Boice testified that, when he first approached the CI's vehicle after the controlled buy on November 5, 2009, he saw two plastic bags of white powder sitting on the front passenger seat. Although Boice did not immediately take those bags into his physical possession as he went to obtain an evidence bag from another vehicle, [Patrol Officer] Slater testified that he observed the CI's vehicle the entire time and did not see anyone other than Boice enter that vehicle. Boice thereafter returned to the vehicle and secured the two plastic bags in a brown evidence bag and transported them back to the police station. Boice also testified that he placed the bags on Caufield's desk while he was interviewing [Danford] in the adjacent interview room at the police station, but that he was able to observe the bags from the interview room. The plastic bags were subsequently transferred into Caufield's possession and, after he weighed and tested the substance contained therein, he placed the evidence into the evidence locker. This process was recorded on exhibit No. 18, the chain of custody document turned over to [Danford] prior to trial.
> The People also presented the testimony of Edward Lake, the evidence custodian of the Cortland County Sheriff's Office in November 2009, that he took the plastic bags from the evidence locker to the crime lab for testing. [Forensic scientist] Romano testified that the bags were received into custody by the crime lab. After they were tested, they were returned to the evidence locker by Caufield. These events were recorded on exhibit No. 28—the chain of custody record maintained by the evidence

> custodian—which exhibit was turned over to defense counsel prior to his examination of Caufield, Romano and Lake.
> Viewed in its entirety, the foregoing provides the necessary reasonable assurances of the identity and unchanged condition of the drugs to authenticate that evidence. Thus, the admission of the cocaine into evidence was proper and any purported gaps in the chain of custody raised by defendant went to the persuasiveness of that evidence, not its admissibility.

Federal courts in New York have held that a chain of custody argument is a matter governed by New York law and provides no basis for federal habeas relief. *See Gonzalez-Pena v. Herbert*, 369 F. Supp. 2d 376, 387 (W.D.N.Y. 2005) (a "chain of custody argument presents a question of State evidentiary law that is generally not amenable to habeas review"); *Tirado v. Senkowski*, 367 F. Supp. 2d 477, 487 (W.D.N.Y. 2005) (accord); *see also Estelle,* 502 U.S. at 67-68 (reemphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Under New York law, "failure to establish a chain of custody may be excused where the circumstances provide reasonable assurances of the identity and unchanged condition of the evidence." *Gonzalez-Pena*, 369 F. Supp. 2d at 387 (citation and internal quotation omitted). Here, the appellate court found that the evidence introduced at trial provided reasonable assurances of the identity and unchanged condition of the cocaine, and this Court is bound by the state court's conclusion absent any indication that Danford was denied a fundamentally unfair trial. *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985). There is no evidence Danford was denied his right to a fair trial.

In his traverse, Danford attempts to cast this claim as a challenge to the sufficiency of the evidence. As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). However, both federal and state law "clearly hold that a defect in the chain of custody goes to the weight of the evidence, not its admissibility." *Gonzalez-Pena*, 369 F. Supp. 2d at 387; *Cassells v. Ricks,* No. 99 Civ. 11616, 2000 WL 1010977, at *7 (S.D.N.Y. July 21, 2000) (citing, *e.g., United States v. Hon,* 904 F.2d 803, 810 (2d Cir. 1990) ("Once the exhibits were admitted into evidence, the alleged defects in the government's chain of custody proof were for the jury to evaluate in its consideration of the weight to be given to the evidence.")); *Tirado*, 367 F. Supp. 2d at 488; *Howard v. Keane,* No. CV-91-0723, 1991 WL 352488, at *2 (E.D.N.Y. Dec. 9, 1991) (finding chain of custody issue not cognizable on habeas review and without merit; whether the packets introduced at petitioner's trial and analyzed as cocaine were the packets seized was a question for the jury). It was therefore the responsibility of the jury, and not this Court, to determine what conclusions could be drawn from the chain of custody evidence introduced at trial. *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam) ("it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial"). A reasonable jury could have concluded that the prosecution established a complete chain of custody for the cocaine, or, at the very least, could have been reasonably assured of the identity and unchanged condition of the drugs. *Jackson*, 443 U.S. at 318-19. Danford is therefore not entitled to relief on this claim.

Claim Three: Violation of *Rosario* Obligations

Prior to trial, the prosecution produced Exhibit 18, an evidence/property report identifying initial transactions in the police chain of custody of the cocaine allegedly sold by Danford to the CI. It had no entries after November 5, 2009.

Sergeant Caufield testified that Exhibit 18 indicated that he conducted a field test on the cocaine. He further testified as to his role in the chain of custody of the cocaine and stated that evidence of the full chain of custody could be found on the "living evidence property report that's held at the Cortland County Sheriff's Office."

On recess between direct- and cross-examination of Sergeant Caufield, the prosecution produced Exhibit 28, which was identical to Exhibit 18 but included additional chain of custody entries made after November 5, 2009. Defense counsel argued that the prosecution had failed to comply with its *Rosario* obligations by belatedly producing Exhibit 28 and requested that the court "unreceive" the exhibit. The prosecution argued that there had been no *Rosario* violation because it turned over Exhibit 28 prior to the cross-examination of Sergeant Caufield, and because Exhibit 28 was essentially a duplicate of Exhibit 18 except to the extent that it contained additional entries, including an entry for that day indicating that Caufield had checked out the evidence to produce it at trial. The court denied defense counsel's request, instead repeatedly offering defense counsel as much time as he needed to review the document. Defense counsel then moved for a mistrial, arguing that it was "not a matter of time, . . . it's a matter of prejudice," which the court denied. Defense counsel cross-examined Sergeant Caufield about his chain of evidence testimony and the process used in creating the "living" document purporting to memorialize chain of custody.

On direct appeal, Danford argued that assuming, arguendo, the prosecution had no obligation to turn over Exhibit 28 prior to the cross-examination of Sergeant Caufield, the prosecution's delayed disclosure denied him his right to due process. Danford alternatively argued that the delayed disclosure could be construed as a violation of *Brady*, 373 U.S. 83, because there was a reasonable probability that the verdict was affected.

The Appellate Division disagreed with Danford's assertion, reasoning as follows:

> We are also unconvinced by [Danford's] contention that the People's failure to turn over exhibit No. 28 prior to trial deprived him of a fair trial. Defense counsel said very little about the chain of custody during his opening statement, and his closing argument was consistent with his opening statement. Although exhibit No. 28 added to the weight of the evidence against [Danford], it did not significantly affect [Danford's] trial strategy of denying that he passed any drugs to the CI and pointing to various gaps in the chain of custody in an attempt to weaken the People's case against him. Further, inasmuch as [Danford] had the opportunity to examine all of the individuals who handled the plastic bags after November 5, 2009 and their testimony was consistent with the information provided on exhibit No. 28, its disclosure during the trial did not prejudice defendant.

Danford now argues, as he did on direct appeal, that the prosecution did not comply with its *Rosario* obligations when it failed to turn over Exhibit 28 before the commencement of jury selection.

Whether the prosecution complied with its discovery obligations under *Rosario*, 173 N.E.2d 881, is a matter of state law and does not implicate federal constitutional principles. Federal Courts in New York have consistently held that a *Rosario* claim is a matter of state law not cognizable on habeas review. *See Landy v. Costello*, No. 97-2433, 1998 WL 105768, at *1 (2d Cir. Mar. 9, 1998) (petitioner's *Rosario* claim is a matter of state law rather than federal law); *Martinez v. Walker*, 380 F. Supp. 2d 179, 186 & n.5 (W.D.N.Y. 2005) (declining to address claim that petitioner procedurally defaulted *Rosario* claim because such a claim is not cognizable on federal habeas review); *Williams v. Senkowski*, No. 02-CV-2074, 2003 WL

22956999, at *10 (E.D.N.Y. Oct. 9, 2003) (petitioner's claim of a *Rosario* violation did not present a federal question and was not cognizable on federal habeas review).

To the extent that Danford alleges a violation under *Brady v. Maryland*, the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is "material either to guilt or to punishment." 373 U.S. at 87. "[T]he Constitution does not require the prosecutor to share all useful information with the defendant." *United States v. Ruiz*, 536 U.S. 622, 629 (2002) (citing *Weatherford v. Bursey*, 429 U.S. 545, 549 (1977) ("There is no general constitutional right to discovery in a criminal case.")). *Brady* and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Id.* at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

There is no evidence that the mid-trial disclosure of Exhibit 28 affected the outcome of the trial because, as the Appellate Division noted, Danford was able to examine all of the witnesses who handled the plastic bags of cocaine after November 5, 2009, and their testimony was consistent with the entries set forth in the exhibit. Danford is therefore not entitled to relief on this claim.

Claim Four: Hearsay Objections to Danford's Testimony

On direct examination, Danford testified as to his account of what happened during the police interview immediately following his arrest. The court sustained several hearsay objections to Danford's testimony about what the officers told him during his interview.

On direct appeal, Danford argued that the trial court committed reversible error in sustaining the prosecution's hearsay objections. The Appellate Division summarily denied Danford relief on this claim. Danford again argues in his Petition before this Court that the trial court denied him his right to present a defense by sustaining the prosecution's hearsay objections.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane*, 476 U.S. at 690 (citation omitted); *Jones*, 229 F.3d at 120. The right to present a defense includes "an accused's right to present his own version of events in his own words." *Rock v. Arkansas*, 483 U.S. 44, 52 (1987); *In re Oliver*, 333 U.S. 257, 273 (1948). The right to present relevant testimony is not without limitation, but restrictions on a defendant's right to testify must not be "arbitrary or disproportionate to the purposes they are designed to serve." *Rock*, 483 U.S. at 55-56.

Whether the exclusion of testimony violates a defendant's right to present a defense depends upon whether the omitted evidence creates a reasonable doubt that did not otherwise exist. *Jones*, 229 F. 3d at 120. In a close case, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. *Id*. Here, the court excluded on hearsay grounds Danford's testimony that officers asked whether they could speak with him,

Danford's testimony that officers told him that he was going to cooperate with them and work for them, Danford's testimony as to what the CI told him, and Danford's testimony that when discussing the street price of drugs, Sergeant Boice told him, "you got to know something, you got to have friends." Nevertheless, Danford testified that he did not sell the CI drugs, but claimed that the CI lent him $2,400 to purchase fuel for his business. Danford was so happy to receive the money that he forgot to discuss the "snow tires," allegedly code for cocaine, that the CI had asked over the phone to purchase. Danford testified that he was handcuffed but not informed as to whether he was under arrest, and that the police did not ask his permission to search his truck. Danford claimed that he did not know at that time why he had been detained. Danford testified that at one point, one officer "kneed [him] in the back." According to Danford, several officers questioned him "for hours," and Danford responded that he was "not a drug dealer." Danford testified that he did not sign the waiver of his rights until the interrogation was over, and that he waived his rights "in order for [him] to leave that night and work with them." He claimed that the officers never showed him the oral admissions form, and swore "on his father's grave" that he did not make those alleged admissions. Although the officers did ask the questions set forth in the form, Danford did not give the answers indicated. Rather, he told the officers he did not sell drugs to the CI.

Danford was thus still able to extensively testify in his own defense and to present his claim that the alleged confession was false. His statements regarding what the police purportedly told him during the interview were not critical to his defense, and their exclusion did not otherwise present him from attempting to raise a reasonable doubt as to his guilt. In addition, his statements did not bear sufficient indicia of reliability so as to make an exception to their exclusion. Danford thus cannot prevail on this claim. *See United States v. Wingate*, 520

F.2d 309, 316 (2d Cir. 1975); *cf. Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (exclusion of hearsay testimony denied defendant his right to present a defense where the testimony bore "persuasive assurances of trustworthiness" and was critical to the defendant's case).

V. CONCLUSION

Danford is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 10, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge